R3M Law, LLP
6 Est 43rd Street, 21st Floor
New York, NY 10017
646.453.7851
Jeffrey N. Rich
Howard P. Magaliff

*Counsel to the Foreign Representative of*
*Virgolino de Oliveira S.A. Açúcar e Álcool, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                                    :        Chapter 15
                                                          :
VIRGOLINO DE OLIVEIRA, S.A.                                :        Case No. 25-10696 (MG)
AÇÚCAR E ÁLCOOL, *et al.*,                                 :
                                                          :        Joint Administation Pending
                   Debtors in a Foreign Proceeding.[1]     :
------------------------------------------------------------x


**VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDING;
(II) RECOGNITION OF FOREIGN REPRESENTATIVE; AND (III) RELIEF
PURSUANT TO 11 U.S.C. §§ 105(a), 1507(a), 1509(b), 1515, 1517, 1520, 1521 AND 1525**

---

[1]  The debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with each Debtor's tax identification or corporate registry number, are: Virgolino de Oliveira S.A. Açúcar e Álcool (No. 49.911.589/0001-79); Agropecuária Nossa Senhora do Carmo S.A. (No. 50.031.780/0001-50); Açucareira Virgolino de Oliveira S.A. (No. 07.024.792/0001-83); Agropecuária Terras Novas S.A. (No. 07.024.787/0001-70); Usina Catanduva S.A. Açúcar e Álcool (No. 44.330.983/0001-08); RO Serviços Agrícolas S.A. (No. 09.575.642/0001-93); Estate of Carmen Ruete de Oliveira (No. 08.460.935/0001-62); Carmen Aparecida Ruete de Oliveira (No. 08.460.973/0001-15); and Virgolino de Oliveira Filho (No. 08.447.511/0001-68).

## TABLE OF CONTENTS

RELIEF REQUESTED..................................................................................................1

PRELIMINARY STATEMENT ....................................................................................2

JURISDICTION AND VENUE .....................................................................................3

BACKGROUND ............................................................................................................4

    I.   History of Grupo Virgolino de Oliveira ("GVO")................................................4

    II.   The Debtors' Capital Structure ...........................................................................6

    A.   2018 Indenture......................................................................................................7

    B.   2020 Indenture......................................................................................................8

    C.   2022 Indenture......................................................................................................8

    III.  Economic and Financial Reasons for GVO's Request for Brazilian Reorganization (Article 51, I of Law No. 11.101/05) ................................................................9

    IV.  The Brazilian Reorganization of The GVO Group.............................................11

    V.   The GVO Plan ....................................................................................................12

BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY ................14

    I.   The Debtors are Eligible for Chapter 15 Relief .................................................14

    II.   The Brazilian Reorganization is a Foreign Main Proceeding............................16

    A.   Foreign Proceeding ............................................................................................17

    B.   Foreign Representative........................................................................................18

    C.   The Petitions Were Properly Filed Under Sections 1504 and 1509 and Meet the Requirements of Section 1515 and Bankruptcy Rule 1007(4) .........................20

    D.   Foreign Main Proceeding ...................................................................................21

    E.   Alternatively, the Brazilian Reorganization is a   Foreign Nonmain Proceeding, and the Court Should Grant Discretionary Relief to the Debtors............................. 23

NOTICE......................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Beveridge v. Vidunas (In re O'Reilly)*,
    598 B.R. 784 (Bankr. W.D. Pa. 2019) ................................................................... 24

*Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*,
    737 F.3d 238 (2d Cir. 2013) ................................................................................. 15

*In re ABC Learning Ctrs. Ltd.*,
    728 F.3d 301 (3d Cir. 2013) ................................................................................. 17

*In re Avanti Commc'ns*,
    582 B.R. 603 (Bankr. S.D.N.Y. 2018) ............................................................ 16, 25

*In re B.C.I. Fins. Pty Ltd.*,
    583 B.R. 288 (Bankr. S.D.N.Y. 2018) ................................................................. 15

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
    374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008)................... 20, 23

*In re Berau Cap. Res. Pte Ltd.*,
    540 B.R. 80 (Bankr. S.D.N.Y. 2015) ............................................................... 15, 16

*In re British Am. Ins. Co.*,
    425 B.R. 884 (Bankr. S.D. Fla. 2010) ................................................................... 23

*In re Cell C Proprietary Ltd.*,
    571 B.R. 542 (Bankr. S.D.N.Y. 2017) ................................................................. 17

*In re Creative Fin. Ltd.*,
    543 B.R. 498 (Bankr. S.D.N.Y 2016) ................................................................... 23

*In re Irish Bank Resolution Corp. (In Special Liquidation)*,
    2014 Bankr. LEXIS 1990 (Bankr. D. Del. Apr. 30, 2014) ...................................... 17

*In re Lupatech S.A.*,
    No. 16-11078 (MG) (Bankr. S.D.N.Y. May 26, 2016) (ECF No. 15) ...................................... 18

*In re Millard*,
    501 B.R. 644 (Bankr. S.D.N.Y. 2013) ................................................................. 17

*In re Millennium Glob. Emerging Credit Master Fund Ltd.*,
   458 B.R. 85 (Bankr. S.D.N.Y. 2011) *aff'd* 474 B.R. 88 (S.D.N.Y. 2012) ................................ 24

*In re OAS S.A.*,
   533 B.R. 83 (Bankr. S.D.N.Y. 2015) ....................................................................................... 19

*In re Ocean Rig UDW Inc.*,
   570 B.R. 687 (Bankr. S.D.N.Y. 2017) ..................................................................................... 16

*In re Odebrecht Engenharia e Construção S.A.*,
   No. 20-12741 (MEW) (Bankr. S.D.N.Y. Dec. 30, 2020) ................................................... 18, 19

*In re Odebrecht Óleo E Gás S.A.*,
   No. 17-13130 (JLG) (Bankr. S.D.N.Y. Dec. 13, 2017) .......................................................... 18

*In re Odebrecht, S.A.*,
   No. 19-12731 (SMB) (Bankr. S.D.N.Y. Sept. 18, 2019) ........................................................ 18

*In re Oi Brasil Holdings Coöperatief U.A.*,
   578 B.R. 169 (Bankr. S.D.N.Y. 2017) ..................................................................................... 19

*In re Ran*,
   607 F.3d 1017 (5th Cir. 2010) ................................................................................................. 24

*In re Samarco Mineração S.A. – Em Recuperação Judical*,
   No. 21-10754 (LGB) (Bankr. S.D.N.Y. May 31, 2021) ..................................................... 18, 19

*In re Serviços de Petróleo Constellation*,
   600 B.R. 237 (Bankr. S.D.N.Y. 2017) ................................................................................ 18, 19

*In re SPhinX, Ltd.*,
   351 B.R. 103 (Bankr. S.D.N.Y. 2006) ..................................................................................... 22

*In re Sunac China Holdings Ltd.*,
   No. 23-11505 (PB), 2024 WL 358118 (Bankr. S.D.N.Y. Jan. 30, 2024) ............................... 22

*In re Suntech Power Holdings Co., Ltd.*,
   520 B.R. 399 (Bankr. S.D.N.Y. 2014) ..................................................................................... 16

*In re U.S.J. - Açúcar e Álcool S.A.*,
   No. 22-10320 (DSJ) (Bankr. S.D.N.Y. April 14, 2022).......................................................... 18

4918-8919-4014, v. 8

*Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re SPhinX Ltd.),*
   371 B.R. 10 (S.D.N.Y. 2007) ................................................................................ 22

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.),*
   714 F.3d 127 (2d Cir. 2013) ................................................................................. 21

*Phoenix Four, Inc. v. Strategic Res. Corp.,*
   446 F. Supp. 2d 205 (S.D.N.Y. 2006) .................................................................. 21

*U.S.J. – Açúcar e Álcool S.A.,*
   No. 22-10320 (DSJ) (Bankr. S.D.N.Y. April 14, 2022) ........................................ 19

## Statutes

11 U.S.C. § 101 ........................................................................................... 15, 17, 19
11 U.S.C. § 109 ...................................................................................................... 15
11 U.S.C. § 1501 .............................................................................................. 14, 15
11 U.S.C. § 1502 ........................................................................................ 15, 18, 23
11 U.S.C. § 1516 .................................................................................................... 21
11 U.S.C. § 1517 ........................................................................................ 17, 20, 23
11 U.S.C. § 1521 ............................................................................................. 24, 25
28 U.S.C. § 1410 .................................................................................................... 16
28 U.S.C. § 157 ....................................................................................................... 3
28 U.S.C. § 1334 ..................................................................................................... 3

4918-8919-4014, v. 8

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Marcos Roberto dos Santos (the "Foreign Representative"), the authorized foreign representative of Virgolino de Oliveira S.A. Açúcar e Álcool ("Virgolino Açúcar e Álcool"); Agropecuária Nossa Senhora do Carmo S.A. ("Agropecuária do Carmo"); Açucareira Virgolino de Oliveira S.A. ("Açucareira"); Agropecuária Terras Novas S.A. ("Agropecuária Terras Novas"); Usina Catanduva S.A. Açúcar e Álcool ("Usina Catanduva"); RO Serviços Agrícolas S.A. ("RO Serviços"); Estate of Carmen Ruete de Oliveira ("Estate of Carmen Ruete"); Carmen Aparecida Ruete de Oliveira ("Carmen Aparecida"); and Virgolino de Oliveira Filho ("Virgolino Filho") (collectively, "GVO", "GVO Group" or "Debtors"), the debtors in judicial receivership (*Recuperação Judicial*) in São Paulo, Brazil (the "Brazilian Reorganization"),[2] by his attorneys R3M Law, LLP, respectfully submits this verified petition for recognition (the "Verified Petition") and states:

## **RELIEF REQUESTED**

1.      The Foreign Representative seeks entry of an order pursuant to sections 105(a), 1507(a), 1509(b), 1515, 1517, 1520, 1521 and 1525 of title 11, United States Code (the "Bankruptcy Code"), (i) granting recognition of the Brazilian Reorganization as a "foreign main proceeding" (as defined in section 1502(4))[3] of the Debtors, (ii) recognizing the Foreign Representative as the "foreign representative" (as defined in section 101(24)) of the Brazilian Reorganization for the Debtors for purposes of the Chapter 15 Cases, and (iii) granting related relief.

2.      In support of this Petition, the Foreign Representative refers the Court to (a) the *Declaration of Marcos Roberto dos Santos in Support of the Verified Petition for*

---

[2]      Two of the original debtors, Virgolino de Oliveira Empreendimentos Imobiliários S.A. and Virgolino de Oliveira Bioenergia Ltda. were merged into other GVO companies under the Plan: (i) VO Bioenergia was incorporated into Virgolino de Oliveira S.A. Açúcar e Álcool and Açucareira Virgolino de Oliveira S.A., and (ii) VO Empreendimentos was incorporated into Agropecuária Terras Novas S.A.

[3]      Unless otherwise stated, references to statutory sections are to the Bankruptcy Code.

*(I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Relief Pursuant to 11 U.S.C. §§ 105(a),1507(a), 1509(b), 1515, 1517, 1520, 1521 and 1525* (the "<u>dos Santos Decl.</u>"); (b) the *Declaration of Adriana Maria Cruz Dias de Oliveira as Brazilian Counsel to the Debtors in Support of the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief* (the "<u>Oliveira Decl.</u>," and together with the dos Santos Decl., the "<u>Declarations</u>"); and (c) the Chapter 15 petition on Official Form 401 for each Debtor, including the attached *Statement Pursuant to Bankruptcy Code Section 1515(c) and Bankruptcy Rule 1007(a)(4)*.

## <u>PRELIMINARY STATEMENT</u>

1.      The Debtors confirmed their Plan on December 12, 2022.  True and correct copies of the Plan, in Portuguese with a certified translation, are attached as <u>Exhibit 2</u> to the dos Santos Decl.  True and correct copies of the Confirmation Order, in Portuguese with a certified translation, are attached as <u>Exhibit 3</u> to the dos Santos Decl.  Pursuant to the Plan, the Debtors are in process of liquidating most of their real property assets, with the proceeds dedicated to paying creditors including those with liens on the properties.  *See, e.g.,* Plan §§ 4.1.2, 5.15, 8.3.

2.      As discussed below, the creditors who will receive the lion's share of the proceeds are holders of Notes issued pursuant to three Indentures (each defined and discussed *infra*).  The current trustee for the 2014 Indenture is UMB Bank, N.A. ("<u>UMB</u>") (the "<u>UMB Trustee</u>"), and the current trustee for the 2018 Indenture and 2022 Indenture is CSC Delaware Trust (f/k/a Delaware Trust Company) ("<u>Delaware Trust</u>" and together with the UMB Trustee, the "<u>Indenture Trustees</u>").

3.      The Debtors commenced the Chapter 15 Cases to seek recognition of the Brazilian Reorganization and the Plan for two reasons: (i) to enable the Notes to be canceled and the Indentures terminated, and (ii) to obtain the benefit of the automatic stay for the Indenture

2

Litigation (defined *infra*).  With respect to the Indentures, an indenture trustee, on its own, does

not have the ability to terminate a note or an indenture.  Without recognition and an order from

this Court pursuant to section 1517, neither Indenture Trustee has the ability to terminate the In-

dentures or the Notes, and the Notes will remain outstanding and subject to enforcement in the

United States.

4.    Accordingly, the Foreign Representative, on behalf of the Debtors, com-

menced these Chapter 15 Cases to complete the restructuring contemplated under the Plan and

ensure that the restructuring is binding upon all holders of Notes, which Notes are denominated

in U.S. dollars and governed by the laws of New York.  To this end, the Foreign Representative

seeks recognition of the Brazilian Reorganization as a foreign main proceeding with respect to

each of the Chapter 15 Debtors, as well as an order granting full force and effect to the Plan and

the Brazilian Confirmation Order, and the other relief described in detail below.

5.    Contemporaneously with this Motion, the Debtors are filing Official Form

401 for each Debtor, the Chapter 15 petition commencing the Chapter 15 Cases (the "Chapter 15

Petition").

## JURISDICTION AND VENUE

6.    This Court has jurisdiction to consider this Petition pursuant to 28 U.S.C.

§§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January

31, 2012 (Preska, C.J.).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).  Venue is

proper under 28 U.S.C. § 1410.

7.    These chapter 15 cases (the "Chapter 15 Cases") have been properly com-

menced under section 1504 by filing a voluntary petition for relief for recognition of the

Brazilian Proceeding under Bankruptcy Code section 1515 for each of the Debtors.  *See* ECF
doc. 1 in each case.[4]

8.      The legal predicates for the relief requested are sections 105(a), 1507(a),
1509(b), 1515, 1517, 1520, 1521 and 1525 of the Bankruptcy Code.

## BACKGROUND

### I.    History of Grupo Virgolino de Oliveira ("GVO")

9.      Usina Nossa Senhora Aparecida was founded in 1921 in Itapira-SP.
Thirty-three years after its founding, in 1954, Sugar Magazine recognized Usina Nossa Senhora
Aparecida as the most modern sugar mill in the world, thanks to its adoption of best operational
practices, which emphasized production excellence and employee quality of life.  In 1970, due to
the strong growth in the sugar-alcohol sector, GVO acquired Usina Catanduva, where it imple-
mented and developed all of the organizational culture concepts and priorities of its founder,
Comendador Virgolino de Oliveira.

10.      GVO has always been guided by the founder's strategic vision and focus
directed toward expanding the businesses, while respecting employee quality of life, the environ-
ment, and relevant social issues.

11.      In 2004, GVO began constructing its third unit in José Bonifácio/SP,
which started operations in 2006.  That same year, construction began on its fourth unit in
Monções/SP, which started operating in 2008.

12.      In addition to the industrial units, other companies were created to com-
plement and integrate GVO's business.  Thus, the so-called "Agropecuárias" were established,
which operate to this day primarily in preparing and cultivating sugarcane, whether in

---

[4]      References to ECF documents are on the docket of the lead case of *In re Virgolino de Oliveira S.A. Açúcar e
Álcool*, case # 25-_____.  The Debtors have filed a motion for joint administration of the Chapter 15 Cases.

4

proprietary areas or those of agricultural partners (through formal agricultural partnership agreements and/or leases).

13.     The Debtors are comprised of the rural landowners where the sugarcane is grown, and the industrial units which crush and process the cane.[5]  There is true integration and coordinated action of all GVO's companies to optimize the business as a whole.  An organizational chart for the GVO companies, which include the Debtors and related non-debtor entities, with the Debtors highlighted, is attached as Exhibit 1.

14.     The years 2005 and 2006 were very favorable for the sugar-energy sector, especially because the Brazilian government began to strongly support ethanol production as a renewable and environmentally sustainable energy source.  However, as had been widely reported in the Brazilian media, the sugar-energy sector was facing an economic crisis of great intensity, the longest and most persistent since the late 1990s.

15.     Difficulties intensified starting in 2008 when the credit crisis occurred, resulting from an increase in credit in the North American market.  The global effects of this crisis led to fluctuations in numerous indices and variables, such as the price of oil, which dropped from $100bbl to less than $60bbl.

16.     In general, oil dictates the price of commodities, resulting in a depreciation of international sugar prices.  The overall indebtedness in the sector itself and of GVO in particular was mainly due to high investments in previous crops prior to 2008, driven by

---

[5]     The industrial units are (i) Usina Itapira; (ii) Usina Monções; (iii) Usina José Bonifácio; and (iv) Usina Catanduva.  The property owners  include: (i) Terras - Parte I; (ii) Terras - Parte II; (iii) Imóveis Urbanos; and (iv) Imóveis.  All rural properties are exclusively included within Terras - Parte I and Terras - Parte II.  At present, only the mill located in Catanduva (Usina Catanduva) remains operational, while the majority of the rural properties are leased to third parties.

4918-8919-4014, v. 8

favorable scenarios for ethanol and sugar; the main driver for ethanol was the increase in flex-fuel vehicle fleets, while for sugar, it was the growth in consumption in emerging countries.

17.    As previously discussed, the GVO companies made substantial investments from 2004 to 2008, with the construction and operation of two new production mills (José Bonifácio and Monções).  Also, until mid-2015, GVO was the largest single shareholder of CO-PERSUCAR, holding an 11.05% stake in the company.

18.    Between 2015 and 2020, the GVO companies experienced a decline in profit margins, primarily attributable to a reduced supply of raw materials, specifically sugarcane, for processing.  During this period, GVO relied predominantly on agricultural partners for its sugarcane supply.  However, due to GVO's financial constraints, these partners ceased fulfilling their contractual supply obligations and instead diverted their production to competing mills in the region, which also resulted in a significant increase in banking costs.

19.    Due to the difficulties imposed by the sector and an incorrect pricing policy implemented by the Brazilian government, GVO entered into an unprecedented economic and financial crisis, facing liabilities at the time the Brazilian Reorganization was commenced approaching R$ 3 billion, divided among labor creditors, financial creditors (secured and unsecured), and general suppliers.

20.    Additionally, at the beginning of the 2020 harvest, the world was in the early stages of the COVID-19 health (and corresponding economic) crisis.

21.    Due to the numerous challenges faced by GVO, significant creditors started to take actions to ensure the payment of their debts.

## II.    **The Debtors' Capital Structure**

22.    The Debtors' outstanding funded indebtedness consists of approximately (a) US $300,000,000 of 10.50% Senior Notes due 2018 (the "2018 Notes") pursuant to an

6

Indenture dated January 28, 2011 (the "2018 Indenture"); (b) US $135,000,000 10.875% Senior

Secured Notes due 2020 (the "2020 Notes") pursuant to an Indenture dated as of June 13, 2014

(the "2020 Indenture"); and (c) US $300,000,000 11.750% Senior Notes due 2022 (the "2022

Notes" and collectively with the 2018 Notes and the 2020 Notes, the "Notes") pursuant to an In-

denture dated February 9, 2012 (the "2022 Indenture" and collectively with the 2018 Indenture

and the 2020 Indenture, the "Indentures").  There is one registered owner of each of the Notes –

Cede & Co – and qualified investors purchased beneficial interests in each of the Notes.

### A.    2018 Indenture

23.    Virgolino de Oliveira Finance Limited (the "2018 Issuer") issued the 2018

Notes, which are unsecured.  The 2018 Indenture is by and among the 2018 Issuer, Agropecuária

Nossa Senhora do Carmo S.A. (the "Company"); Virgolino de Oliveira S.A. Açúcar E Álcool,

Açucareira Virgolino De Oliveira S.A.; and Agropecuária Terras Novas S.A. (together with the

Company, the "2018 Guarantors"), The Bank of New York Mellon Trust (Japan), Ltd. as Princi-

pal Paying Agent, The Bank of New York Mellon in its capacities as Trustee, Registrar, New

York Paying Agent, and Transfer Agent (the "2018 Former Trustee"), and The Bank of New

York Mellon (Ireland) Limited as Irish Listing and Paying Agent.  Pursuant to an Instrument of

Removal, Appointment and Acceptance dated as of December 15, 2020, Delaware Trust was

substituted for the 2018 Former Trustee.

24.    Pursuant to the guarantee provisions in the 2018 Indenture, the 2018 Guar-

antors absolutely and unconditionally guaranteed the due and punctual payment of all principal,

interest and all other amounts payable under the 2018 Notes by the 2018 Issuer in favor of the

noteholders.  The 2018 Indenture is governed by New York law and contains a New York forum

selection clause.

7

B.    **2020 Indenture**

25.    Virgolino de Oliveira Finance S.A. (the "2020 Issuer") issued the 2020
Notes.  The 2020 Notes were secured by the assets of "UPI Usina Itapira" and "UPI Usina
Monções".[6]  The 2020 Indenture is by and among the 2014 Issuer Defendant; Agropecuária
Nossa Senhora do Carmo S.A., Virgolino de Oliveira S.A. Açúcar e Álcool, Açucareira Virgo-
lino de Oliveira S.A. and Agropecuária Terras Novas S.A. (collectively, the "2020 Guarantors");
The Bank of New York Mellon (as trustee, registrar, paying agent, transfer agent, U.S. collateral
agent, and U.S. accounts bank, together the "2020 Former Trustee"), BNY Mellon Serviços Fi-
nanceiros Distribuidora de Títulos e Valores Mobiliários S.A. (as Brazil Collateral Agent) and
The Bank of New York Mellon SA/NV Dublin Branch (as Irish Paying Agent).  Pursuant to an
Instrument of Removal, Appointment and Acceptance dated as of October 15, 2020, UMB was
substituted for the 2020 Former Trustee.

26.    Pursuant to the guarantee provisions in the 2020 Indenture, the 2020 Guar-
antors absolutely and unconditionally guaranteed the due and punctual payment of all principal,
interest and all other amounts payable under the 2020 Notes by the 2020 Issuer in favor of the
noteholders.  The 2020 Indenture is governed by New York law and contains a New York forum
selection clause.

C.    **2022 Indenture**

27.    Virgolino de Oliveira Finance S.A. (the "2022 Issuer" and together with
the 2018 Issuer and 2020 Issuer, the "Issuers") issued the 2022 Notes, which are unsecured.  The
2022 Indenture is by and among the 2022 Issuer, Agropecuária Nossa Senhora do Carmo S.A.
(the "Company"); Virgolino de Oliveira S.A. Açúcar E Álcool; Açucareira Virgolino De

---

[6]    A "UPI" is defined as "one or more independent productive units to be organized under this Plan, for the special
purpose of disposal, as provided for in Articles 60 and 142 of the LRF."  Plan, ¶ 1.2.53.

Oliveira S.A.; and Agropecuária Terras Novas S.A. (together with the Company, the "2022 Guarantors", and together with the 2018 Guarantor and the 2020 Guarantor, the "Guarantors"), The Bank of New York Mellon Trust (Japan), Ltd. as Principal Paying Agent, The Bank of New York Mellon in its capacities as Trustee, Registrar, New York Paying Agent, and Transfer Agent (the "2022 Former Trustee"), and The Bank of New York Mellon (Ireland) Limited as Irish Paying Agent.  Pursuant to an Instrument of Removal, Appointment and Acceptance dated as of December 15, 2020, Delaware Trust was substituted for the 2022 Former Trustee.

28.    Pursuant to the guarantee provisions in the 2022 Indenture, the 2022 Guarantors absolutely and unconditionally guaranteed the due and punctual payment of all principal, interest and all other amounts payable under the 2022 Notes by the 2022 Issuer in favor of the noteholders.  The 2022 Indenture is governed by New York law and contains a New York forum selection clause.

### III.    Economic and Financial Reasons for GVO's Request for Brazilian Reorganization (Article 51, I of Law No. 11.101/05)

29.    For reasons beyond the control of their managers, at the beginning of 2020 GVO was experiencing a severe economic and financial crisis and facing serious difficulties in maintaining regular business activities.  The reasons included:

a.    continuous losses for more than five years;

b.    recurring judicial blocks on bank accounts;

c.    economic uncertainty projected for the coming years due to the negative effects of the COVID-19 pandemic; and

d.    reduction in available raw material for milling (sugarcane) due to the difficulty of retaining partners in light of financial constraints and the lack of financial resources.

9

30.      Many external factors also contributed to the economic and financial crisis affecting GVO.  The markets in which GVO operated (sugar and ethanol production and sales) had been facing significant negative impact for many years due to flawed policies adopted by the Brazilian government.  Ethanol production costs significantly exceeded the value at which it was sold from the mills to distributors.  As a result, mills began prioritizing sugar production, leading to a large supply of the commodity and, predictably, a collapse in prices.  The adverse effects of the COVID-19 pandemic and the necessity of implementing social distancing measures all affected the cash flow and survival of GVO in their market.

31.      It was clear that the crisis took hold and was exacerbated by cumulative losses in the 5-year period leading up to the commencement of the Brazilian Reorganization, which adversely affected the core business.

32.      As a result of these financial headwinds, the Issuers and Guarantors also defaulted under the Notes.

33.      On December 15, 2020, UMB as trustee and the holders of beneficial ownership interests in the 2020 Notes in an aggregate principal amount over $124,500,000 commenced an action against Virgolino de Oliveira Finance S.A. as the 2020 Issuer in Supreme Court, New York County by filing a motion for summary judgment in lieu of complaint under Index No. 657047/2020.  On January 13, 2021, the same plaintiffs filed a complaint against the 2020 Guarantors under Index No. 650261/2021.  The cases ware consolidated and are pending under the caption *In re Virgolino de Oliveira Finance Litigation A*, Index No. 657047/2020 ("Litigation A").

34.      On January 12, 2021, Delaware Trust as trustee and the holders of beneficial ownership interests in the 2018 Notes in an aggregate principal amount over $149,940,000 commenced an action against the 2018 Issuer and the 2018 Guarantors in Supreme Court, New

10

York County by filing a complaint under Index No. 650243/2021. On January 13, 2021, Dela-

ware Trust as trustee and the holders of beneficial ownership interests in the 2022 Notes in an

aggregate principal amount over $123,400,000 commenced an action against the 2022 Issuer and

the 2022 Guarantors in Supreme Court, New York County by filing a complaint under Index No.

650261/2021. This case was consolidated with the other Delaware Trust action and is pending

under the caption *In re Virgolino de Oliveira Finance Litigation B*, Index No. 650243/2021

("Litigation B" and together with Litigation A, the "Indenture Litigation").

35.    Cumulatively, these financial hardships left the Debtors no choice but to

file for Brazilian Reorganization to keep the employment and income-generating source active.

**IV.    The Brazilian Reorganization of The GVO Group**

36.    On May 28, 2021, the GVO Group filed its Petição Inicial (the "Brazilian

Petition") commencing the Brazilian Reorganization. True and correct copies of the Brazilian

Petition, in Portuguese with a certified translation are attached as Exhibit 1 to the dos Santos

Decl. GVO commenced the Brazilian Reorganization to enable the companies to restructure

their debts within a legally secure environment, as well as to potentially increase their revenues.

37.    GVO's intent was to continue activities within the framework of the Bra-

zilian Reorganization, which would provide the security and liquidity to maintain and prepare

their sugarcane fields and purchase cane from partners, and increase milling capacity. This

would generate more robust cash flow to enable GVO's recovery. The Brazilian Reorganization

was the only tool capable of enabling GVO to resume their activities, optimize operations and

increase net revenues, which would allow for the payment of all creditors.

38.    Law No. 11.101/05 aims to enable overcoming this economic and finan-

cial crisis, preserving the productive source, employees' jobs, and creditors' interests, thus pro-

moting business continuity, its social function, and stimulating economic activity. Furthermore,

Law No. 11.101/05 is embedded within the current legal framework in Brazil, in harmony with

the general principles guiding business activities in the country, as guaranteed by the Brazilian

Constitution in Article 170, which ensures an economic order founded on the value of human la-

bor and free enterprise.

39.     Given the need for the GVO companies to meet their numerous commit-

ments to their various creditors, Brazilian Reorganization emerged as the unavoidable legal and

economic solution.  It is also worth noting that at the time of filing in 2021, GVO employed

more than 500 people, with the capacity to employ approximately 8,000 workers, making GVO a

vital source of wealth generation in the region where their units are located.

40.     Brazilian law has a counterpart to the automatic stay called the "stay pe-

riod," established under Article 6 of Law No. 11.101/2005, as amended ("Brazilian Bankruptcy

Law").  Unlike the automatic stay, the stay period under Brazilian law requires judicial confirma-

tion.  The Brazilian Court granted the Debtors a stay under Brazilian Law.  However, only the

Brazilian proceedings were subject to the stay.  As a result, the Indenture Litigation continued

after the Brazilian Reorganization was commenced, but the plaintiffs agreed to voluntarily stay

the litigation while the reorganization proceeded and pending the filing of the Chapter 15 Cases.[7]

## V.     The GVO Plan

41.     The GVO Plan was approved by a vote of creditors following the Credi-

tors' General Meeting according to Articles 45 and 58 of Law no. 11.101/2005, as amended.

The Brazilian Court entered the Confirmation Order on December 12, 2022.  After confirmation

of the Plan, the noteholders' claims were restructured in accordance with the Plan.

---

[7]     The court presiding over the Indenture Litigation will no longer approve voluntary stays to the litigation and has
ordered the parties to continue discovery.  The Debtors, through their Foreign Representative, commenced the
Chapter 15 Cases in part to obtain the benefits of the automatic stay with respect to the Indenture Litigation.

4918-8919-4014, v. 8

42.    There are no specific provisions in the Plan addressing payment to the noteholders; instead, there are provisions for the payment of unsecured creditors and those with collateral.  The Debtors have commenced distributions pursuant to the Plan, and noteholders will continue to receive payments according to the nature of their respective credits,[8] in line with the Plan's treatment for both unsecured credits and credits with collateral.

43.    Unsecured creditors are paid under Clauses 9.1 and 9.2 of the Plan.[9]  The sources of funds for payment of unsecured creditors are cash from amounts received by the Debtors from Brazilian court-ordered payments known as "IAA Credits" and proceeds from the sale of various UPIs and real property.  Additionally, unsecured creditors may acquire UPI Usina José Bonifácio, UPI Terras – Part II, UPI Urban Real Properties, and UPI Future Credits using their unsecured credits, in the event that the sale attempts for these UPIs are unsuccessful.  In such cases, these acquiring creditors will be responsible for paying the remaining amount of other unsecured credits under the conditions set out in Clause 9.3 of the Plan.

44.    Creditors with collateral will be paid pursuant to Clause 8.1 of the Plan. In summary, each secured creditor will be paid with proceeds from the sale of the asset that serves as collateral, with a minimum discount of 25% (Clause 8.1).  The discount may exceed 25%, depending on the auction results for the sale of assets and the stage of the process when the sale is finalized (all auctions include at least four phases).  The assets to be sold to pay secured creditors including the holders of 2020 Notes are "UPI Usina Catanduva," "UPI Usina Itapira," "UPI Usina Monções," "UPI Real Properties" and "UPI Terras – Part I."  If the sale of assets fails, secured creditors will have the opportunity to receive the respective UPI as payment in kind, which will settle their debt.  If more than one creditor with collateral holds a claim on the

---

[8]    In the Plan's terminology, "credits" are "claims."
[9]    "Clauses" are numbered sections or paragraphs of the Plan.

4918-8919-4014, v. 8

same UPI, those creditors who settle their claims via payment in kind of the UPI will assume re-
sponsibility for paying the other creditors with collateral, at a rate of 30% of their credits
(Clauses 8.3.2.1, 8.3.2.2.1, 8.3.3.1, 8.3.4.1, and 8.3.5).

45.     The asset auction process began in December 2024 with the initiation of
competitive bidding processes for the divestment of "UPI Usina Monções", "UPI Usina José
Bonifácio", "UPI Imóveis", and "UPI Imóveis Urbanos".  However, to date, no binding offers
have been submitted by potential purchasers, and accordingly, no assets have been sold.

## BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

46.     Chapter 15 is designed to, among other things, facilitate the rehabilitation
of financially troubled businesses to protect investment and preserve employment.  *See* 11
U.S.C. § 1501(a)(5).  Consistent with these principles, the Foreign Representative commenced
these Chapter 15 Cases to obtain recognition of the Brazilian Reorganization and to give full and
binding effect in the United States to the Confirmation Order, specifically, the cancellation and
discharge of the 2018 Notes and Indenture, the 2020 Notes and Indenture, and the 2022 Notes
and Indenture and the discharge of UMB and Delaware Trust as Indenture Trustees.  The Foreign
Representative also seeks recognition from this Court to obtain the benefit of the automatic stay
against the continuation of the Indenture Litigation in Supreme Court, New York County.  As set
forth below, the Foreign Representative has satisfied the requirements of recognition and en-
forcement of the Brazilian Reorganization.

## I.     The Debtors are Eligible for Chapter 15 Relief

47.     The Debtors are eligible to be debtors in a chapter 15 case.  A chapter 15
"debtor" means an entity that is the subject of a foreign proceeding.  11 U.S.C. § 1502(1).  An
entity, in turn, includes any person, and a person includes a corporation.  11 U.S.C. § 101(15).
Here, the Debtors are each incorporated under the laws of Brazil, and are each an "entity."  *Id.*

14

§§ 101(15), (41); dos Santos Decl. ¶ 13.  Each Debtor is the subject of a foreign proceeding, and

does not fall within any of the categories excluded from chapter 15 eligibility, as set forth in sec-

tion 1501(c).  Accordingly, the Debtors are eligible for chapter 15 relief.  11 U.S.C. §§ 1501(b)

and (c).

48.     The Debtors are also eligible chapter 15 debtors under section 109(a) be-

cause they have property in the United States.  Section 109(a) provides that "only a person that

resides or has a domicile, a place of business, *or property* in the United States, or a municipality,

may be a debtor." 11 U.S.C. § 109(a) (emphasis added).  Under section 109(a), a foreign debtor

must reside or have a domicile, a place of business, or property in the United States to be eligible

to file a chapter 15 petition.  *See Drawbridge Special Opportunities Fund LP v. Barnet (In re*

*Barnet)*, 737 F.3d 238, 247 (2d Cir. 2013).

49.     Section 109(a) does not require a specific amount or dollar value of prop-

erty in the United States, nor does it indicate when or for how long such property must have a

U.S. situs.  *See, e.g.*, *In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015).  A

foreign debtor satisfies the section 109 requirement even when it has only a nominal amount of

property in the United States.  *See, e.g.*, *In re B.C.I. Fins. Pty Ltd.*, 583 B.R. 288, 293 (Bankr.

S.D.N.Y. 2018) ("[C]ourts that have construed the 'property' requirement in Section 109 'with

respect to foreign corporations and individuals have found the eligibility requirement satisfied by

even a minimal amount of property located in the United States.'"  (citation omitted)).  For ex-

ample, attorney retainers deposited in New York satisfy the "property in the United States" eligi-

bility requirement of Bankruptcy Code section 109(a).  *See, e.g.*, *In re Ocean Rig UDW Inc.*, 570

B.R. 687, 700 (Bankr. S.D.N.Y. 2017) (citing a retainer held by New York counsel in a New

York account as a factor satisfying Bankruptcy Code section 109(a)), *aff'd*, 764 F. App'x 46 (2d

Cir. 2019).  *See also, In re Suntech Power Holdings Co., Ltd*., 520 B.R. 399, 416 (Bankr.

S.D.N.Y. 2014) (holding that establishing a deposit account in New York "had the effect of es-

tablishing a basis for venue in [the Southern District of New York] under 28 U.S.C. § 1410(1)").

50.    Additionally, courts in this district have found that contracts (*e.g.*, inden-

tures) governed by New York law or contracts containing provisions submitting parties to the ju-

risdiction of New York state and federal courts give rise to property rights supporting debtor eli-

gibility under section 109(a) of the Bankruptcy Code. *See, e.g.*, *In re Avanti Commc'ns*, 582

B.R. 603, 610–611 (Bankr. S.D.N.Y. 2018) (holding that the debtor's indenture "is governed by

New York law, which separately satisfies the 'property in the United States' requirement for eli-

gibility to file a chapter 15 case under section 109(a) of the Bankruptcy Code."); *Berau*, 540 B.R.

at 83–84 ("The Court concludes that the presence of the New York choice of law and forum se-

lection clauses in the *Berau* indenture satisfies the section 109(a) 'property in the United States'

eligibility requirement.").

51.    Here, the Debtors satisfy the eligibility requirement of section 109(a) be-

cause they have property in the United States.   dos Santos Decl. ¶ 34.  The Debtors have an in-

terest in certain funds deposited with R3M Law, LLP as a retainer for its services in connection

with the Chapter 15 Cases, which are held in a client trust account in New York.  Further, the In-

dentures are governed by New York law and contain a New York forum selection clause.  Thus,

the Debtors have certain property rights under the Indentures.  The retainer and the New York

law governing the Notes and Indentures, are "independently sufficient" bases for jurisdiction and

satisfy the "property" requirement of section 109(a). *See In re Cell C Proprietary Ltd.*, 571 B.R.

542, 551 (Bankr. S.D.N.Y. 2017).

## II.    The Brazilian Reorganization is a Foreign Main Proceeding

52.    Section 1517(a) provides that, after notice and a hearing, an order recog-

nizing a foreign proceeding shall be entered if (a) such foreign proceeding is a foreign main

16

proceeding or foreign nonmain proceeding within the meaning of section 1502; (b) the foreign representative applying for recognition is a person or body; and (c) the petition meets the requirements of section 1515.  *See* 11 U.S.C. § 1517(a).  Recognition is mandatory if all three requirements of section 1517(a) are met.  *In re Millard*, 501 B.R. 644, 653-54 (Bankr. S.D.N.Y. 2013).  Each of the requirements of section 1517(a) is met, and the Brazilian Reorganization must be recognized as a foreign main proceeding.

A.      <u>**Foreign Proceeding**</u>

53.      The Brazilian Reorganization satisfies the definition of a "foreign proceeding" in section 101(23), which requires that a "foreign proceeding" be (a) a collective judicial or administrative proceeding relating to insolvency or adjustment of debt; (b) pending in a foreign country; (c) under the supervision of a foreign court; and (d) for the purpose of reorganizing or liquidating the assets and affairs of the debtor.  11 U.S.C. § 101(23); *see also In re ABC Learning Ctrs. Ltd*., 728 F.3d 301, 308 (3d Cir. 2013); *In re Irish Bank Resolution Corp. (In Special Liquidation)*, 2014 Bankr. LEXIS 1990, *39-40 (Bankr. D. Del. Apr. 30, 2014).  Each of the elements is addressed below.

54.      <u>First</u>, the Brazilian Reorganization is a collective judicial proceeding relating to insolvency or adjustment of debt.  Oliveira Decl. ¶ 7.   On May 28, 2021, the Debtors commenced the Brazilian Reorganization in the Brazilian Court, which has exclusive jurisdiction over matters relating to the claims being restructured.   *Id.* ¶ 17.   The Brazilian Reorganization is "collective" in that it administers the claims of all creditors whose claims are being restructured in a single proceeding. *Id.* ¶ 7.

55.      <u>Second</u>, the Brazilian Reorganization is pending in a foreign country under a law relating to insolvency, Law No. 11.101/2005. *Id.* ¶ 2.

17

56.    <u>Third</u>, through the Brazilian Reorganization, the Debtors' actions concern-

ing the Notes are subject to the supervision of the Brazilian Court. *Id*. ¶ 18. The Bankruptcy

Code defines "foreign court" as a "judicial or other authority competent to control or supervise a

foreign proceeding." 11 U.S.C. § 1502(3).

57.    <u>Fourth</u>, one of the purposes of the Brazilian Reorganization is to provide a

court-supervised reorganization of the Debtors' operations and assets. *Id*. ¶ 15.

58.    Courts in this district have previously recognized similar proceedings in

Brazil as "foreign proceedings." *See In re Odebrecht Engenharia e Construção S.A.*, No. 20-

12741 (MEW) (Bankr. S.D.N.Y. Dec. 30, 2020) (ECF No. 15) (recognizing a Brazilian Reorgan-

ization proceeding under the Brazilian Bankruptcy Law); *In re Odebrecht Óleo E Gás S.A.*, No.

17-13130 (JLG) (Bankr. S.D.N.Y. Dec. 13, 2017) (ECF No. 28) (same); *In re Lupatech S.A.*, No.

16-11078 (MG) (Bankr. S.D.N.Y. May 26, 2016) (ECF No. 15) (same).[10]

## B.    <u>Foreign Representative</u>

59.    The Foreign Representative is the proper "foreign representative" of the

Brazilian Reorganization, satisfying sections 101(24) and 1517(a)(2). Section 101(24) provides

that a foreign representative be authorized "to administer the reorganization or the liquidation of

the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C.

§ 101(24). The Bankruptcy Code does not require that the foreign representative be appointed

by the foreign court. Instead, a debtor may appoint a foreign representative pursuant to corporate

authorizations passed in accordance with application corporate laws. *See, e.g. In re Oi Brasil*

---

[10]    It is also well-established by this Court that Brazilian Reorganizations constitute "foreign proceedings." *See,
e.g.*, *In re U.S.J. - Açúcar e Álcool S.A.*, No. 22-10320 (DSJ) (Bankr. S.D.N.Y. April 14, 2022) (ECF No. 21)
(recognizing a Brazilian reorganization proceeding as a foreign main proceeding); *In re Samarco Mineração
S.A. – Em Recuperação Judical*, No. 21-10754 (LGB) (Bankr. S.D.N.Y. May 31, 2021) (ECF No. 22) (same);
*In re Odebrecht, S.A.*, No. 19-12731 (SMB) (Bankr. S.D.N.Y. Sept. 18, 2019) (ECF No. 22) (same); *In re
Serviços de Petróleo Constellation*, 600 B.R. 237, 270 (same).

4918-8919-4014, v. 8

*Holdings Coöperatief U.A.*, 578 B.R. 169, 183 (Bankr. S.D.N.Y. 2017) (recognizing appointment of foreign representative "pursuant to resolutions and powers of attorney signed by authorized representatives of each [foreign debtor]"); *In re OAS S.A.*, 533 B.R. 83, 95 (Bankr. S.D.N.Y. 2015) (the "Bankruptcy Code does not require the judicial authorization or appointment of the foreign representative").

60.    Here, the Foreign Representative is an individual who has been duly appointed by the respective Debtors' boards of directors or shareholders, as applicable pursuant to the relevant corporate laws, as their foreign representative in accordance with section 101(24) and to commence these Chapter 15 Cases. dos Santos Decl. ¶ 32. Courts in this district routinely recognize the appointment of foreign representatives in similar manners as acceptable for purposes of commencing chapter 15 cases. *See, e.g., In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 270 (Bankr. S.D.N.Y. 2019) (a foreign representative appointed pursuant to resolution of the debtors' boards is a proper "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code and meets the requirements of 1517(a)(2)); *see also U.S.J. – Açúcar e Álcool S.A.*, No. 22-10320 (DSJ) (Bankr. S.D.N.Y. April 14, 2022) (ECF No. 21) (recognizing a person appointed by the chapter 15 debtors' board of directors as a duly appointed foreign representative within the meaning of section 101(24) of the Bankruptcy Code); *In re Samarco Mineração S.A. – Em Recuperação Judicial*, No. 21-10754 (LGB) (Bankr. S.D.N.Y. May 31, 2021) (ECF No. 22) (same); *In re Odebrecht Engenharia e Construção S.A.*, No. 20-12741 (MEW) (Bankr. S.D.N.Y. Dec. 30, 2020) (ECF No. 15) (same).

4918-8919-4014, v. 8

C.     **The Petitions Were Properly Filed Under Sections 1504 and 1509 and**
       **Meet the Requirements of Section 1515 and Bankruptcy Rule 1007(4)**

61.    The final requirement for recognition of a foreign proceeding under section 1517(a) is that the petition for recognition meets the procedural requirements of section 1515. *See* 11 U.S.C. § 1517(a)(3).  All of those procedural requirements are satisfied.

62.    First, the Foreign Representative properly commenced these Chapter 15 Cases in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by filing the Chapter 15 Petitions with all of the documents and information required by sections 1515(b) and (c). *See In re Bear Stearns*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code.").

63.    Second, in accordance with sections 1515(b)(1)-(2) and (d) of the Bankruptcy Code, the Foreign Representative has submitted evidence, translated into English, of the existence of the Brazilian Reorganization and the appointment of the Foreign Representative as foreign representative thereof.  *See* dos Santos Decl., ¶¶ 25, 27, 32, Exhibits 1 - 4.

64.    Third, in accordance with section 1515(c), the contemporaneously filed disclosures contain a statement identifying the Brazilian Reorganization as the only foreign proceeding currently pending with respect to each of the Debtors.

65.    Last, the Foreign Representative has also satisfied the additional filing requirements set forth in Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) corporate ownership statement containing the information described in Bankruptcy Rule 7007.1, as required by Bankruptcy Rule 1007(a)(4)(A), and (b) the names and addresses of all persons or bodies authorized to administer the foreign proceedings of the

Debtors and all parties to litigation pending in the United States in which the Debtors are a party

at the time of the filing of the Chapter 15 Petitions.

      **D.**       **Foreign Main Proceeding**

      66.     The Brazilian Reorganization is a "foreign main proceeding" as defined in

Bankruptcy Code section 1502(4). A "foreign main proceeding" is "a foreign proceeding pend-

ing in the country where the debtor has the center of its main interests," ("COMI"). 11 U.S.C.

§ 1502(4); *see also section* 1517(b)(1) (providing that an order of recognition as a foreign main

proceeding will be entered if the foreign proceeding "is pending in the country where the debtor

has the center of its main interests").

      67.     COMI should be determined based on the debtor's activities "at or around

the time the Chapter 15 petition is filed." *See Morning Mist Holdings Ltd. v. Krys (In re Fair-*

*field Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013). The restructuring or liquidation activities of

the chapter 15 debtor up to the date of the chapter 15 filing are properly considered in determin-

ing its COMI. *Id.* at 135 (considering the activities of the pre-filing liquidating committee in

winding down the debtor's operations, as well as the actions of liquidators appointed under Brit-

ish Virgin Islands law in determining the entity's COMI). A COMI analysis inquires as to the

debtor's substantive "locus of operations" – the center of its operations, purpose, function, and

activities, among others. *See Phoenix Four, Inc. v. Strategic Res. Corp.*, 446 F. Supp. 2d 205,

214-15 (S.D.N.Y. 2006) (internal citations and quotations omitted). There is a rebuttable pre-

sumption, though, that a debtor's COMI is its "registered office." 11 U.S.C. § 1516(c).

      68.     Courts consider a variety of factors in identifying a debtor's COMI, none

of which on their own are determinative, including: the location of a debtor's headquarters; the

location of those persons or entities that actually manage a debtor; the location of a debtor's pri-

mary assets; the location of the majority of the debtor's creditors or of a majority of the creditors

who would be affected by the case; and the jurisdiction whose law would apply to most disputes.
*See In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd sub nom., Krys v. Offi-
cial Comm. of Unsecured Creditors of Refco Inc. (In re SPhinX Ltd.)*, 371 B.R. 10 (S.D.N.Y.
2007).  In *In re SPhinX*, the bankruptcy court explained that the factors should not be applied
"mechanically" and "[i]nstead, they should be viewed in light of chapter 15's emphasis on pro-
tecting the reasonable interests of parties in interest pursuant to fair procedures and the maximi-
zation of the debtor's value."  *Id.; In re Sunac China Holdings Ltd.*, No. 23-11505 (PB), 2024
WL 358118, at *5 (Bankr. S.D.N.Y. Jan. 30, 2024) ("Application of the SPhinX factors in this
case illustrates the aptness of Judge Drain's observation that 'the Court should not apply such
factors mechanically' but instead should evaluate and apply each factor in light of chapter 15's
policies." (quoting *In re SPhinX*, 351 B.R. at 117)).

69.    Applying the foregoing factors, it is clear that each of the Debtors has its
COMI in Brazil.  The Debtors' operations take place in Brazil and are performed by employees
that are all based in Brazil.  dos Santos Decl. ¶ 36.   The Debtors' revenues derive from growing,
crushing, processing and refining sugarcane, and those revenues are paid primarily in Brazilian
reais by a primarily Brazilian customer base.  *Id.*  All of the Debtors have their registered offices
in Brazil.  The directors, officers and senior management are in Brazil.  *Id.*  With the exception
of the noteholders, a majority of the creditors are in Brazil and Brazilian law governs those rela-
tionships.[11]  *Id.*  All obligations to creditors derive their creditworthiness and expectations of re-
payment from revenue earned largely in Brazil from Brazilian client groups.  *Id.*  Pursuant to the
terms of the Indentures, creditors have had notice that restructuring of the Debtors' obligations

---

[11]    It is precisely because the Notes and Indentures are governed by New York law that the Debtors have filed the
Chapter 15 Petitions.

could take place in Brazil, and that the ability of the Debtors to repay the Notes is dependent

largely on operations and revenues derived largely from Brazil.  Oliveira Decl. ¶ 18.

> ### E.    Alternatively, the Brazilian Reorganization is a Foreign Nonmain Proceeding, and the Court Should Grant Discretionary Relief to the Debtors

70.    While the Brazilian Reorganization satisfies the statutory requirements for

a "foreign main proceeding," should this Court conclude that the Brazilian Reorganization is not

the foreign main proceeding of any of the Debtors, it should be recognized as a "foreign nonmain

proceeding."

71.    A "foreign nonmain proceeding," is defined as "a foreign proceeding,

other than a foreign main proceeding, pending in a country where the debtor has an establish-

ment." *See* 11 U.S.C. § 1502(5); *see also id*. § 1517(b)(2) (providing that an order of recognition

as a "foreign nonmain proceeding" shall be entered "if the debtor has an establishment within the

meaning of section 1502 in the foreign country where the proceeding is pending").  An establish-

ment is "any place of operations where the debtor carries out a nontransitory economic activity."

11 U.S.C. § 1502(2).  "Nontransitory economic activity" has been construed as "a local place of

business.  *See In re Creative Fin. Ltd.*, 543 B.R. 498, 520 (Bankr. S.D.N.Y 2016) (holding that

in order to have an establishment in a country a debtor must "conduct business in that country");

*see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 374

B.R. 122, 127 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

72.    Chapter 15 provides no evidentiary presumption as to whether a debtor

has an establishment in a particular jurisdiction.  *See Bear Stearns II*, 389 B.R. 325, 338

(S.D.N.Y. 2008).  Thus, whether an establishment exists in a particular location is "essentially a

factual question," *id.* at 338, and the Foreign Representative bears the burden of proof.  *In re*

*British Am. Ins. Co.*, 425 B.R. 884, 915 (Bankr. S.D. Fla. 2010).  As with a determination of a

debtor's COMI, whether the debtor has an "establishment" in a country is determined at the time

of filing the chapter 15 petition. *See Beveridge v. Vidunas (In re O'Reilly)*, 598 B.R. 784, 803

(Bankr. W.D. Pa. 2019) (adopting *Fairfield Sentry* and *In re Ran*, 607 F.3d 1017 (5th Cir. 2010)

findings that "the presumptive date from which [a c]ourt is to ascertain [a] debtor's center of

main interests and/or establishment is the date the Chapter 15 petition was filed"). Several fac-

tors "contribute to identifying an establishment: the economic impact of the debtor's operations

on the market, the maintenance of a 'minimum level of organization' for a period of time, and

the objective appearance to creditors whether the debtor has a local presence." *In re Millennium*

*Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 85 (Bankr. S.D.N.Y. 2011) *aff'd* 474 B.R. 88

(S.D.N.Y. 2012).

73.      In this case, there is no question that each of the Debtors satisfies the stat-

utory requirements for the Brazilian Reorganization to qualify as a foreign nonmain proceeding.

The Debtors are an integrated corporate group managed from Brazil and doing business princi-

pally in Brazil.  dos Santos Decl. ¶¶ 25, 36.  Each of the companies is headquartered in Brazil,

carries out nontransitory operations in Brazil, and is known to its creditors as a Brazilian opera-

tion.  The Debtors' economic output flows directly to the Brazilian economy.

74.      If the Court determines that the Brazilian Reorganization is a nonmain

proceeding for any of the Debtors, then the Foreign Representative also respectfully requests that

the Court apply the automatic stay with respect to any Debtor that is a defendant in the Indenture

Litigation, to the same extent the stay would apply under section 1520(a) if the Brazilian Reor-

ganization were recognized as a foreign main proceeding with respect to that Debtor. *See* 11

U.S.C. §§ 1521(a)(1), (2) and (7).

75.      As noted above, the Brazilian law stay does not apply to the Indenture Lit-

igation.  Although the parties have agreed to voluntarily stay litigation efforts, a new judge

assigned to the Indenture Litigation will not permit any more voluntary stays. The judge directed

the parties to proceed with discovery and appear at a status conference on December 19, 2024,

with any non-appearing party subject to sanctions. At the conference, the Court informed the

parties that until a bankruptcy stay is in place, the litigation would continue. One of the reasons

for the Chapter 15 filing is to obtain the benefit of the section 362 automatic stay, which applies

automatically when a foreign proceeding is recognized as a foreign main proceeding but is dis-

cretionary when a foreign proceeding is recognized as a foreign nonmain proceeding.

76. Sections 1521(a)(1) and (2) permit the Court, respectively, to stay "the

commencement or continuation of an individual action or proceeding concerning a debtor's as-

sets, rights, obligations or liabilities" and "execution against the debtor's assets." Section

1521(a)(7) also permits the Court to grant (with certain exceptions not applicable here) "any ad-

ditional relief that may be available to a trustee" when necessary to "effectuate the purpose of

[chapter 15] and to protect the assets of the debtor or the interests of the creditors." Because re-

lief under section 362 of the Bankruptcy Code is available to a trustee in a plenary proceeding,

that relief may be granted under section 1521(a)(7).

77. The Court may exercise its discretionary powers under section 1521 to

grant "any appropriate relief" to a foreign representative "where necessary to effectuate the pur-

pose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors," pro-

vided that the "the interests of the creditors and other interested entities, including the debtor, are

sufficiently protected." 11 U.S.C. §§ 1521(a), 1522(a); *see also Avanti*, 582 B.R. at 612 ("The

discretion that is granted is exceedingly broad, since a court may grant any appropriate relief that

would further the purposes of chapter 15 and protect the assets and interests of creditors.").

78. As discussed *supra*., the plaintiffs (Indenture Trustees and certain note-

holders) already consented to stay the Indenture Litigation, although the judge is determined to

move forward.  Entry of an order by this Court pursuant to section 1521 staying the litigation is necessary to achieve the purposes of the Chapter 15 case.

### <u>NOTICE</u>

79.     In accordance with Bankruptcy Rule 2002(q), the Foreign Representative will provide notice of this Petition to: (a) the Debtors; (b) the Office of the United States Trustee; (c) the Indenture Trustees; (d) parties entitled to notice under Bankruptcy Rule 2002(q)(1); (e) all other parties that request notice in these cases pursuant to Bankruptcy Rule 2002 one day prior to the date of such service; and (f) all parties the Foreign Representative believes to be affected by the relief requested pursuant to Local Bankruptcy Rule 9013-1.  The Foreign Representative submits that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.[12]

80.     No previous request for the relief sought in this Petition has been made by the Foreign Representative to this or any other court.

**[remainder of page intentionally left blank]**

---

[12]   Contemporaneously with the Petition, the Foreign Representative is filing the *Motion Pursuant to Fed. R. Bankr. 2002 and 9007 Requesting Entry of Order Scheduling Recognition Hearing and Specifying Form and Manner of Service of Notice*.

4918-8919-4014, v. 8

**WHEREFORE**, the Foreign Representative respectfully requests entry of the

proposed order granting the relief requested in the form of <u>Exhibit 2</u>, and such other and further

relief as the Court considers appropriate.

Dated:    New York, New York                R3M LAW, LLP
          April 9, 2025                      Counsel to the Foreign Representative
                                             By:

                                             <u>/s/ Howard P. Magaliff</u>
                                             JEFFREY N. RICH
                                             HOWARD P. MAGALIFF
                                             6 East 43rd Street, 21st Floor
                                             New York, NY 10017
                                             646.453.7851
                                             *jrich@r3mlaw.com*
                                             *hmagaliff@r3mlaw.com*

27

## <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I, Marcos Roberto dos Santos, affirm the following under penalty of perjury under the laws of the United States of America as follows:

I am the Director of Operations of Virgolino de Oliveira S.A. Açúcar e Álcool and the authorized foreign representative of the Debtors named in the foregoing Verified Petition for Recognition of Foreign Proceeding.  I have read the Verified Petition and know the contents thereof.  The same are true to my knowledge, information and belief.

Unless otherwise indicated, all facts set forth in this Verified Petition are based upon: (a) my review of relevant information, data and documents (including oral information) furnished to me by GVO Group and its legal advisors; (b) information supplied to me by the Chapter 15 Debtors' officers, directors, employees and professionals; and/or (c) my analyses of the information I have received on the Chapter 15 Debtors' operations and financial condition.

I am an individual over the age of 18.  If I am called to testify, I will do so competently and based on the facts set forth herein.

Dated:  April 9, 2025

/s/ Marcos Roberto dos Santos
Marcos Roberto dos Santos

4918-8919-4014, v. 8

## EXHIBIT 1

**Organizational Chart**

ORGANOGRAMA SOCIETÁRIO GRUPO VIRGOLINO DE OLIVEIRA - Julho/24



# EXHIBIT 2

**Proposed Recognition Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:                                                      :        Chapter 15

                                                            :

VIRGOLINO DE OLIVEIRA, S.A.                                 :        Case No. 25-10696 (MG)
AÇÚCAR E ÁLCOOL, *et al.*,                                  :

                                                            :        (Joint Administration Pending)

        Debtors in a Foreign Proceeding.[1]     :

-----------------------------------------------------------------x

### ORDER GRANTING (I) RECOGNITION OF FOREIGN PROCEEDING; (II) RECOGNITION OF FOREIGN REPRESENTATIVE; AND (III) RELIEF PURSUANT TO 11 U.S.C. §§ 105(a), 1507(a), 1509(b), 1515, 1517, 1520, 1521 AND 1525

Upon the *Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Relief Pursuant to 11 U.S.C. §§ 105(a), 1507(a), 1509(b), 1515, 1517, 1520, 1521 and 1525* dated April 9, 2025 (and together with Official Form 401, the "Petition"), the *Declaration of Adriana Maria Cruz Dias de Oliveira as Brazilian Counsel to the Debtors in Support of the Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representative, and (III) Related Relief*, and the *Statement of Foreign Representative Pursuant to Bankruptcy Code Section 1515(c) and Bankruptcy Rule 1007(a)(4) in Support of Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding* by Marcos Roberto dos Santos (the "Foreign Representative"), the authorized foreign representative of Virgolino de Oliveira S.A. Açúcar e Álcool ("Virgolino Açúcar e Álcool"); Agropecuária Nossa Senhora do Carmo S.A. ("Agropecuária do Carmo"); Aquaria Virgolino de Oliveira S.A. ("Açucareira"); Agropecuária Terras Novas S.A. ("Agropecuária Terras Novas"); Usina Catanduva S.A. Açúcar e Álcool ("Usina Catanduva"); RO Serviços Agríco-

---

[1]   The debtors in these chapter 15 cases (the "Chapter 15 Cases"), along with each Debtor's tax identification or corporate registry number, are: Virgolino de Oliveira S.A. Açúcar e Álcool (No. 49.911.589/0001-79); Agropecuária Nossa Senhora do Carmo S.A. (No. 50.031.780/0001-50); Açucareira Virgolino de Oliveira S.A. (No. 07.024.792/0001-83); Agropecuária Terras Novas S.A. (No. 07.024.787/0001-70); Usina Catanduva S.A. Açúcar e Álcool (No. 44.330.983/0001-08); RO Serviços Agrícolas S.A. (No. 09.575.642/0001-93); Estate of Carmen Ruete de Oliveira (No. 08.460.935/0001-62); Carmen Aparecida Ruete de Oliveira (No. 08.460.973/0001-15); and Virgolino de Oliveira Filho (No. 08.447.511/0001-68).

las S.A. ("RO Serviços"); Estate of Carmen Ruete de Oliveira ("Estate of Carmen Ruete"); Car-

men Aparecida Ruete de Oliveira ("Carmen Aparecida"); and Virgolino de Oliveira Filho ("Vir-

golino Filho") (collectively, the "Debtors"), the debtors in judicial receivership (*Recuperação*

*Judicial*) in São Paulo, Brazil (the "Brazilian Reorganization"),[2] by his attorneys R3M Law,

LLP, seeking entry of an order pursuant to sections 105(a), 1507(a), 1509(b), 1515, 1517, 1520,

1521 and 1525 of title 11, United States Code (the "Bankruptcy Code"), (i) granting recognition

of the Brazilian Reorganization as a "foreign main proceeding," as defined in section 1502(4) of

the Bankruptcy Code, of the Debtors, (ii) recognizing the Foreign Representative as the "foreign

representative," as defined in section 101(24) of the Bankruptcy Code, of the Brazilian Reorgan-

ization for the Debtors for purposes of the Chapter 15 Cases, and (iii) granting related relief; and

the Court having held a hearing on _____, 2025 (the "Hearing") and determined that the

relief set forth herein is in the best interests of the Debtors and their estates and creditors; and

upon all of the proceedings had before the Court and after due deliberation and sufficient cause

appearing therefor, the Court hereby **FINDS** and **CONCLUDES** that:

A.       The findings and conclusions set forth herein constitute this Court's find-

ings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy

Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they

are adopted as such. To the extent any of the following conclusions of law constitute findings of

fact, they are adopted as such.

B.       The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

---

[2]    Two of the original debtors, Virgolino de Oliveira Empreendimentos Imobiliários S.A. and Virgolino de
Oliveira Bioenergia Ltda. were merged into other GVO companies under the Plan: (i) VO Bioenergia was
incorporated into Virgolino de Oliveira S.A. Açúcar e Álcool and Açucareira Virgolino de Oliveira S.A., and
(ii) VO Empreendimentos was incorporated into Agropecuária Terras Novas S.A.

4877-6334-7453, v. 6

C.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and the

Court has the statutory and constitutional authority to issue a final ruling.

D.      Venue is proper pursuant to 28 U.S.C. § 1410.

E.      The Debtors have property and property rights within this district and are

eligible to be debtors in a chapter 15 case pursuant to sections 109 and 1501 of the Bankruptcy

Code.

F.      The Foreign Representative is the duly appointed "foreign representative"

of each of the Debtors within the meaning of section 101(24) of the Bankruptcy Code.

G.      The Chapter 15 Cases were properly commenced pursuant to sections

1504, 1509 and 1515 of the Bankruptcy Code, and the Foreign Representative has complied with

section 1515 of the Bankruptcy Code and Bankruptcy Rules 1007(a)(4) and 2002.

H.      Due and proper notice of the Petition and Hearing have been provided in

accordance with the *Order Pursuant to Federal Rules of Bankruptcy Procedures 2002 and 9007

Scheduling Hearing and Specifying Form and Manner of Service and Notice* [ECF No. __][3] (the

"Scheduling Order") and in compliance with the requirements of Bankruptcy Rule 2002(q) as

evidence by the filed Certificate of Service [ECF No. __], and no other or further notice need be

provided.

I.      The Brazilian Reorganization is a "foreign proceeding" within the mean-

ing of section 101(23) of the Bankruptcy Code.

J.      The Brazilian Reorganization is entitled to recognition by this Court pur-

suant to section 1517 of the Bankruptcy Code.

K.      Brazil is the center of main interests of the Debtors, and the Brazilian Re-

organization is a "foreign main proceeding" within the meaning of section 1502(4) of the Bank-

---

[3]      References to ECF documents are on the docket of the lead case of *In re Virgolino de Oliveira S.A. Açúcar e
Álcool*, case # 25-10696.  The Debtors have filed a motion for joint administration of the Chapter 15 Cases.

3

ruptcy Code and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

L.      The Foreign Representative and the Debtors, as applicable, are entitled to the relief available pursuant to section 1520 of the Bankruptcy Code and to additional relief pursuant to sections 1507 and 1521(a) of the Bankruptcy Code, to the extent set forth in this Order.

M.      The relief granted herein will not cause undue hardship or inconvenience to any creditor of the Debtors or other party in interest and to the extent that any hardship or inconvenience may result to such parties, it is outweighed by the benefits of the requested relief to the Debtors, their estates and their creditors.

N.      The relief granted herein is necessary and appropriate to effectuate the purposes and objectives of chapter 15 and to protect the Debtors and the interests of their creditors and other parties in interest.

O.      The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States; it is warranted pursuant to sections 105(a), 1145(a), 1506, 1507(a), 1509(b), 1515, 1517, 1520, 1521(a) and 1525 of the Bankruptcy Code.

THEREFORE, based upon the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** that:

1.      The petitions for recognition and other relief requested in the Petition are granted.

2.      Pursuant to 11 U.S.C. § 101(24), the Foreign Representative is the duly appointed foreign representative of the Debtors and is authorized to act on behalf of the Debtors in the Chapter 15 Cases.  The Foreign Representative is granted relief pursuant to section 1509(b) of the Bankruptcy Code.

4

3.      Pursuant to 11 U.S.C. § 1517, the Brazilian Reorganization is granted

recognition as a foreign main proceeding.

4.      Pursuant to 11 U.S.C. § 1520, all relief and protection afforded to a for-

eign main proceeding pursuant to section 1520 of the Bankruptcy Code is granted to the Brazili-

an Reorganization, the Debtors, and the Debtors' assets located within the territorial jurisdiction

of the United States, as applicable, including the application of section 362 of the Bankruptcy

Code, which bars the commencement or continuation of actions against the Debtors and/or prop-

erty of the Debtors located within the territorial jurisdiction of the United States.  The Debtors

and their respective successors, agents, representatives, advisors, and counsel are entitled to the

protections contained in sections 306 and 1510 of the Bankruptcy Code.

5.      Pursuant to 11 U.S.C. § 1521, to the extent not provided by section 1520

of the Bankruptcy Code, all creditors of the Debtors are enjoined from (a) continuing any litiga-

tion against the Debtors pending in any court located within the territorial jurisdiction of the

United States, (b) disposing of or otherwise taking or continuing to take any action against any

property of the Debtors located within the territorial jurisdiction of the United States, and (c) tak-

ing or continuing to take any action to obtain possession of or exercise control over any property

of the Debtors located within the territorial jurisdiction of the United States.

6.      Notwithstanding anything to the contrary contained herein, this Order

shall not be construed as enjoining (a) the police or regulatory act of a governmental unit, includ-

ing a criminal action or proceeding, to the extent not stayed pursuant to section 362 of the Bank-

ruptcy Code or staying the exercise of any rights not stayed pursuant to section 362(o) of the

Bankruptcy Code, (b) any action permitted or contemplated by (i) the Plan (ii) the Brazilian Con-

firmation Order, or (iii) any agreement entered into in connection with the Plan, or (c) solely to

5

the extent that the Plan is no longer effective under Brazilian law for any reason, any action that is not prohibited by the Brazilian Court with jurisdiction over the Plan or Brazilian law.

7.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, (a) this Order shall be effective immediately and enforceable upon entry; (b) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Foreign Representative is authorized and empowered, and may in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

8.      The administration and realization of all or part of the assets of the Debtors within the territorial jurisdiction of the United States is entrusted to the Foreign Representative, and the Foreign Representative is established as the exclusive representative of the Debtors in the United States pursuant to section 1521(a) of the Bankruptcy Code.

9.      A copy of this Order shall be served within seven (7) business days of entry upon the Notice Parties, with such service being good and sufficient service and adequate notice for all purposes.

10.      This Court retains jurisdiction with respect to all matters arising from or relating to the interpretation, implementation, enforcement, amendment or modification of this Order and any other request for additional relief in or related to the Chapter 15 Cases.

Dated: New York, New York
        _____, 2025

                                        _____
                                        Hon. Martin Glenn
                                        Chief U.S. Bankruptcy Judge

4877-6334-7453, v. 6